**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF MICHIGAN**
**SOUTHERN DIVISION**

ROBERT ALLEN HOON, JR.,

       *Plaintiff*,

*v.*

COMMISSIONER OF
SOCIAL SECURITY,

       *Defendant*.

_____/

CASE NO. 20-11169

HON. STEPHANIE DAWKINS DAVIS
DISTRICT JUDGE

HON. PATRICIA T. MORRIS
MAGISTRATE JUDGE

## MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION ON CROSS-MOTIONS FOR SUMMARY JUDGMENT (ECF Nos. 15, 17.)

## I.    RECOMMENDATION

Plaintiff Robert Hoon, Jr. challenges Defendant Commissioner of Social Security's final decision denying his claim for Title XVI Supplemental Security Income ("SSI"). The matter was referred to me for review. (ECF No. 3); *see* 28 U.S.C. § 636(b)(1)(B); E.D. Mich. LR 72.1(b)(3). For the reasons below, I conclude that substantial evidence supports the Commissioner's final decision. Accordingly, I recommend **DENYING** Plaintiff's motion for summary judgment, (ECF No. 15), **GRANTING** the Commissioner's motion, (ECF No. 17), and **AFFIRMING** the Commissioner's final decision.

1

II.   **REPORT**

A.   **Introduction and Procedural History**

Plaintiff's application[1] for SSI was filed on February 27, 2017. (ECF No. 13, PageID.205.) Plaintiff alleges he became disabled on September 10, 2013. (*Id.*) The Commissioner denied the claim. (*Id.* at PageID.130–37.) Plaintiff then requested a hearing before an administrative law judge ("ALJ"), which occurred on December 11, 2018. (*Id.* at PageID.71–92.) The ALJ issued a decision on March 6, 2019, finding that Plaintiff was not disabled. (*Id.* at PageID.55–66.) The Appeals Council denied review on April 17, 2020. (*Id.* at PageID.47–49.) Plaintiff sought judicial review on May 8, 2020. (ECF No. 1.) The parties have filed cross-motions for summary judgment and briefing is complete. (ECF Nos. 15, 17, 18.)

B.   **Standard of Review**

The Court has jurisdiction to review the Commissioner's final administrative decision pursuant to 42 U.S.C. § 405(g). The district court's review is restricted solely to determining whether the "Commissioner has failed to apply the correct legal standard or has made findings of fact unsupported by substantial evidence in the record." *Sullivan v. Comm'r of Soc. Sec.*, 595 F. App'x. 502, 506 (6th Cir. 2014) (internal quotation marks omitted). Substantial evidence is "more than a scintilla of evidence but less than a preponderance." *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007) (internal

---

[1] Plaintiff had a previous filing for Disability Insurance Benefits and Supplemental Security Income benefits on April 29, 2014. (ECF No. 13, PageID.96.) This resulted in an unfavorable decision by an ALJ on January 13, 2016. (*Id.* at PageID.104.) Plaintiff pursued judicial review, and the case was dismissed. (*Id.* at PageID.129.)

quotation marks omitted). "[T]he threshold for such evidentiary sufficiency is not high. . . . It means—and means only—'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019).

The Court must examine the administrative record as a whole, and may consider any evidence in the record, regardless of whether it has been cited by the ALJ. *See Walker v. Sec'y of Health & Human Servs.*, 884 F.2d 241, 245 (6th Cir. 1989). The Court will not "try the case de novo, nor resolve conflicts in the evidence, nor decide questions of credibility." *Cutlip v. Sec'y of Health & Human Servs.*, 25 F.3d 284, 286 (6th Cir. 1994). If the Commissioner's decision is supported by substantial evidence, "it must be affirmed even if the reviewing court would decide the matter differently and even if substantial evidence also supports the opposite conclusion." *Id*. at 286. (internal citations omitted).

### C.    Framework for Disability Determinations

Disability benefits are available only to those with a "disability." *Colvin v. Barnhart*, 475 F.3d 727, 730 (6th Cir. 2007). "Disability" means the inability

> to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than [twelve] months.

42 U.S.C. § 1382c(a)(3)(A). The Commissioner's regulations provide that disability is to be determined through the application of a five-step sequential analysis:

> (i) At the first step, we consider your work activity, if any. If you are doing substantial gainful activity, we will find that you are not disabled.

> (ii) At the second step, we consider the medical severity of your impairment(s). If you do not have a severe medically determinable physical or mental impairment that meets the duration requirement . . . or a

combination of impairments that is severe and meets the duration requirement, we will find that you are not disabled.

(iii) At the third step, we also consider the medical severity of your impairment(s). If you have an impairment(s) that meets or equals one of our listings in appendix 1 of this subpart and meets the duration requirement, we will find that you are disabled.

(iv) At the fourth step, we consider our assessment of your residual functional capacity and your past relevant work. If you can still do your past relevant work, we will find that you are not disabled.

(v) At the fifth and last step, we consider our assessment of your residual functional capacity and your age, education, and work experience to see if you can make an adjustment to other work. If you can make an adjustment to other work, we will find that you are not disabled. If you cannot make an adjustment to other work, we will find that you are disabled.

20 C.F.R. § 404.1520; *see also Heston v. Comm'r of Soc. Sec.*, 245 F.3d 528, 534 (6th Cir. 2001). "Through step four, the claimant bears the burden of proving the existence and severity of limitations caused by [his or] her impairments and the fact that [he or] she is precluded from performing [his or] her past relevant work." *Jones v. Comm'r of Soc. Sec.*, 336 F.3d 469, 474 (6th Cir. 2003). The claimant must provide evidence establishing the residual functional capacity, which "is the most [the claimant] can still do despite [his or] her] limitations," and is measured using "all the relevant evidence in [the] case record." 20 C.F.R. §§ 404.1545(a)(1), 416.945(a)(1).

The burden transfers to the Commissioner if the analysis reaches the fifth step without a finding that the claimant is not disabled. *Combs v. Comm'r of Soc. Sec.*, 459 F.3d 640, 643 (6th Cir. 2006). At the fifth step, the Commissioner is required to show that "other jobs in significant numbers exist in the national economy that [the claimant] could perform

given [his or] her RFC and considering relevant vocational factors." *Rogers*, 486 F.3d at 241 (citing 20 C.F.R. §§ 416.920(a)(4)(v), (g)).

### D.   ALJ Findings

Following the five-step sequential analysis, the ALJ determined that Plaintiff was not disabled. (ECF No. 13, PageID.66.) At step one, the ALJ found Plaintiff had not engaged in substantial gainful activity since the application date of February 1, 2017. (*Id.* at PageID.60.) At step two, the ALJ concluded that Plaintiff's severe impairments were degenerative disc disease, spondylosis, radiculopathy, herniation of the lumbar spine, migraine, and obesity. (*Id.*) These impairments did not meet or medically equal a listed impairment at step three. (*Id.* at PageID.61.) Next, the ALJ found that Plaintiff had the residual functional capacity ("RFC")

> to perform light work as defined in 20 CFR 416.967(b) except he can occasionally push/pull with the lower extremities and operate foot controls. He can never climb ladders, ropes, or scaffolds. He can never kneel or crawl. The claimant can occasionally climb ramps and stairs. He can frequently balance, stoop, and crouch. He can never work with vibrations or perform commercial driving. He can never operate moving machinery. The claimant can never work around hazards such as unprotected heights or unguarded/uncovered machinery. He can carry out simple instructions.

(*Id.*) At step four, the ALJ found Plaintiff was unable to perform any past relevant work. (*Id.* at PageID.64.) Finally, at step five, the ALJ determined that Plaintiff could perform a significant number of jobs in the national economy. (*Id.* at PageID.65.) This included cashier, fast-food worker, and office clerk. (*Id.*) Accordingly, Plaintiff was found to be not disabled. (*Id.* at PageID.66.)

### E.      Administrative Record

#### 1.      Overview of Medical Evidence

##### a.      Treatment Notes

In February 2016, at Insight Pain Management Center (with Dr. Rampersaud), Plaintiff complained of low back pain that radiated to his right leg. (ECF No. 13, PageID.300.) The pain was rated 8/10, and it was worse with sitting, lifting and bending. (*Id.*) Plaintiff mentioned minimal relief from medication. (*Id.*) The assessment was lumbar region radiculopathy and spondylosis, low back and right leg pain. (*Id.*) Plaintiff's current medications included Lyrica, Parafon, Cymbalta, and nortriptyline. (*Id.*)

Also, in February 2016, Plaintiff had a lumbar spine MRI. (*Id.* at PageID.290.) The impression noted a probable transitional lumbosacral segment, right foraminal herniation at L2-3, moderate left foraminal stenosis at L4-5, and mild right foraminal stenosis at L5-S1. (*Id.* at PageID.291.) There was also retrolisthesis, disc bulging, and facet hypertrophy. (*Id.*) Next, an x-ray of his lumbar spine showed no fracture or subluxation. (*Id.* at PageID.302.)

At a March 2016 follow-up appointment, Plaintiff continued to complain of back and lower extremity pain. (*Id.* at PageID.298.) He reported no numbness or weakness. (*Id.*) There was a recommended for Plaintiff for medication, for steroid injections, and to engage in aquatic physical therapy. (*Id.* at PageID.299.) Further, at another appointment, Plaintiff noted a history of migraines that are exacerbated by direct sunlight. (*Id.* at PageID.296.) Plaintiff was to continue on Pamelor medication and will receive a note for window tinting. (*Id.*) Plaintiff's active problem list included low back pain, radiculopathy, lumbar

spondylosis, right leg pain, migraine, sacroiliitis, chronic pain syndrome, right elbow lateral epicondylitis, traumatic spondylopathy, contracture of muscle, motor-vehicle accident, and long-term use of opiate analgesic. (*Id.* at PageID.458.)

In April 2016, Plaintiff complained of his chronic back pain to Dr. Laynes. (*Id.* at PageID.322.) Plaintiff reported not sleeping well because of pain, but he is eating well and going to the gym five times per week. (*Id.*) Plaintiff had an unremarkable physical examination. (*Id.*) The impression here was chronic low back pain, osteoarthritis of the spine with radiculopathy, insomnia, lichen simplex chronicus, and a 38 BMI. (*Id.* at PageID.323–24.) Plaintiff was advised to try physical exercise, relaxation exercise, and work on a healthy diet. (*Id.* at PageID.324.) Plaintiff was started on a trial of Trazodone. (*Id.*)

Also, in April 2016, Plaintiff received a steroid injection for his lumbar radiculopathy. (*Id.* at PageID.461.) Later, Plaintiff described receiving no relief from this, and his pain remained unchanged as to location, intensity, and characteristic. (*Id.* at PageID.463.) Plaintiff's pain was rated at 7/10 for the past month, was described as constant, and was made worse with sitting, standing, bending, walking, sleeping, and lifting. (*Id.* at PageID.464.) Plaintiff had an unremarkable physical examination. (*Id.*)

Plaintiff's pain continued, with unchanged symptoms. (*Id.* at PageID.468.) He was started on low dose Tramadol. (*Id.* at PageID.469.) Plaintiff described getting minimal pain relief with medication. (*Id.* at PageID.470.) Plaintiff had an unremarkable physical examination, and the exam noted his leg pain improved. (*Id.*)

Plaintiff requested a refill of Trazodone, from Dr. Laynes, because it was helping with his sleeping. (*Id.* at PageID.321.) Later, Plaintiff presented with congestion, sore throat, and sinus pain. (*Id.* at PageID.319.) The assessment of Plaintiff was acute bacterial sinusitis, and Plaintiff was to take Augmentin for 5 days. (*Id.* at PageID.320.)

Plaintiff continued to request Trazodone as it helped with sleeping. (*Id.* at PageID.318.) Plaintiff continued to have sinus pressure, drainage and cough, and a sore throat. (*Id.*) Plaintiff was advised on Flonase, Zyrtec, and a saline rinse. (*Id.* at PageID.319.)

Plaintiff described 50% pain relief with Tramadol. (*Id.* at PageID.474.) A recommendation for Plaintiff was continued medication and lumbar facet block. (*Id.*) Plaintiff tested positive for THC, and he did not have a medical marijuana card yet. (*Id.*)

In September 2016, Plaintiff continued to complain of low back pain, and indicated that right leg pain was worsening, and Tramadol was not helping. (*Id.* at PageID.477.) Plaintiff was started on Norco. (*Id.*) Plaintiff was advised to exercise and use stretching. (*Id.*) Also in September, Plaintiff complained of runny nose, congestion, plugged ear, and watery eyes, and these symptoms were described as moderately severe. (*Id.* at PageID.317.) Plaintiff was advised on Flonase, Zyrtec, and saline rinse. (*Id.* at PageID.318.)

Plaintiff described Norco as helping a little with his pain. (*Id.* at PageID.479.) Joe Danko, NP, described Plaintiff as being stable on his current pain medication with no new concerns at this time. (*Id.*) Plaintiff's current treatment would continue. (*Id.*)

Plaintiff complained of numbness in his whole right leg. (*Id.* at PageID.316.) Plaintiff also indicated he was walking on a treadmill more often. (*Id.*) Plaintiff's range of

motion of his back was normal, there was no paraspinal spasm, and he had negative straight leg raising tests. (*Id.* at PageID.317.) He had tender bilateral sacroiliac joints. (*Id.*)

In October 2016, Plaintiff was evaluated for his headaches at Covenant Healthcare with Dr. Udehn. (*Id.* at PageID.436–37.) Plaintiff was in moderate or some apparent distress and discomfort. (*Id.* at PageID.439.) He had negative straight leg raise tests on left and right. (*Id.*) Plaintiff had normal range of motion, stability and motor/tone for his upper and lower extremities. (*Id.* at PageID.440.) A CT exam of Plaintiff's head showed a small bone exostosis at the site of the palpable lump in the frontal scalp. (*Id.* at PageID.328.) Plaintiff's primary diagnosis here was osteoma of the skull and surgery was suggested. (*Id.* at PageID.446.) At a post-operation follow-up, Plaintiff indicated he did not have headaches. (*Id.* at PageID.447, 451.)

Also, in October 2016, Plaintiff complained of on/off numbness in his left hand. (*Id.* at PageID.315.) Plaintiff was advised on an over-the-counter wrist splint, and an upper extremity EMG and neurosurgeon referral were considered. (*Id.* at PageID.316.)

In November 2016, Plaintiff complained of tingling in his left arm. (*Id.* at PageID.483.) His current back pain treatment continued. (*Id.*) He was stable on his medication. (*Id.*) In December, the Insight Institute record noted an EMG[2] from the prior month, and it stated "normal EMG study of the bilateral lower extremities without clear electrodiagnostic evidence of a myeloneuropathy, plexopathy, or radiculopathy. There is also no clear electrodiagnostic evidence of a peripheral neuropathy." (*Id.* at PageID.485.)

---

[2] EMG evaluation. (*Id.* at PageID.330–31, 593–94.)

His current treatment was continued. (*Id.*) Plaintiff had an unremarkable physical examination. (*Id.* at PageID.314.) He had a negative straight leg raise test. (*Id.*) He also had a bump on the forehead. (*Id.*) Plaintiff was advised on diet and medication. (*Id.* at PageID.314–15.)

Later in November, Plaintiff complained of gastroesophageal reflux, with difficulty swallowing, dysphagia, and heartburn. (*Id.* at PageID.308.) Plaintiff was advised as to exercise, diet, Prilosec, relaxation, and sleep. (*Id.* at PageID.311–12.)

In January 2017, Plaintiff's pain was then at a 5/10, with the worst being a 10/10. (*Id.* at PageID.486.) In February 2017, Plaintiff's pain was at an 8, and SI injections were recommended for him. (*Id.* at PageID.488–89.)

Plaintiff continued with Dr. Laynes and complained of chronic back pain, GERD, and lichen simples chronicus. (*Id.* at PageID.584.) Plaintiff indicated he went to the gym twice a day. (*Id.*) Plaintiff had an unremarkable physical examination. (*Id.* at PageID.585.) Plaintiff would be referred to neurosurgery when needed, but Plaintiff was "not ready for it yet." (*Id.*) Plaintiff was advised as to diet and exercise. (*Id.*) In May 2017, Plaintiff complained of a right-side leg spasm, but that did not wake him at night. (*Id.* at PageID.583.) He did not describe any numbness, tingling, or weakness there. (*Id.*) Plaintiff went on a trial of 300 mg of Gabapentin. (*Id.* at PageID.584.) In July 2017, Plaintiff complained of right knee pain. (*Id.* at PageID.582.)

Plaintiff's care continued, and by July 2017, Plaintiff continued to complain of low-back and right leg pain. (*Id.* at PageID.501.) Plaintiff also had tingling in his left arm. (*Id.*) Plaintiff's primary care physician increased Plaintiff's Gabapentin for his leg tingling. (*Id.*)

Plaintiff was described as being stable on his current medication and able to function on a daily basis. (*Id.*) In August 2017, Plaintiff requested an increase in his Norco; instead, Plaintiff was started on Diclofenac. (*Id.* at PageID.505.) At the next appointment, Plaintiff's pain continued but was stable on medication. (*Id.* at PageID.508.) And at the next appointment, the record noted an October MRI[3] of Plaintiff's lumbar spine did not show significant change. (*Id.* at PageID.510.) In December 2017, Plaintiff reported to Covenant Emergency Room for cough, fevers, and body ache. (*Id.* at PageID.379.) After testing, Plaintiff was advised to consult with primary care doctor and to take Tylenol and Motrin. (*Id.* at PageID.382.)

In January 2018, a chest x-ray showed no acute cardiopulmonary findings. (*Id.* at PageID.589.) In April 2018, Plaintiff complained of back pain, GERD, and lichen simples chronicus. (*Id.* at PageID.569.) Plaintiff was advised as to exercise and diet; Plaintiff claimed he exercised five times per week. (*Id.* at PageID.571.)

Plaintiff underwent physical therapy from March 2018 to June 2018. (*Id.* at PageID.402–25.) Plaintiff was discharged after achieving maximum therapeutic potential. (*Id.* at PageID.425.)

In May 2018, Plaintiff's low back and right leg pain continued. (*Id.* at PageID.533.) The record noted a May EMG[4] that showed right chronic mild L5 radiculopathy. (*Id.*) Plaintiff complained of right arm pain in June 2018. (*Id.* at PageID.568.) He underwent a

---

[3] MRI Lumbar spine. (*Id.* at PageID.373–74.) The impression stated "Spondylosis and disc disease at multiple levels, no significant change since the previous study from 2016. Right lateral disc herniation extending to the right neural foramina at L2-3 is stable." (*Id.*)
[4] EMG Examination. (*Id.* at PageID.392.)

right lateral epicondylitis injection. (*Id.* at PageID.537.) Plaintiff reported being able to move his right elbow more and with less pain. (*Id.* at PageID.540.) Plaintiff was given a two-month handicap sticker. (*Id.* at PageID.542.)

In October 2018, Plaintiff had tenderness over the SI joints and a positive straight leg raise test with the right leg. (*Id.* at PageID.545.)

In November 2018, Plaintiff indicated that Norco was not giving him relief from pain. (*Id.* at PageID.548) Dr. Rampersaud placed him on Belbuca. (*Id.*) An MRI this month showed right lateral disc herniation and moderate right-side foraminal stenosis (L2-3); mild disc bulging and facet hypotrophy and mild left-sided foraminal stenosis (L3-4); slight retrolisthesis, mild disc bulging, far left lateral herniation, and moderate left-sided foraminal stenosis (L4-5); slight retrolisthesis, mild disc bulging, and mild bilateral foraminal stenosis (L5-S1). (*Id.* at PageID.552–53.) There was no significant change, here, compared to the last October 2017 MRI. (*Id.*)

### b.   Opinion Evidence

Plaintiff's disability claim was evaluated by state agency doctor Dr. Robert Nelson. (*Id.* at PageID.117–26.) He determined Plaintiff's medically determinable impairments were degenerative disc disease (severe), obesity (severe), and osteoarthrosis (severe). (*Id.* at PageID.121.) Plaintiff's symptoms of pain, weakness, and fatigue were found to be partially consistent with the medical/non-medical evidence. (*Id.* at PageID.122.) Plaintiff's residual functional capacity was found as follows. Plaintiff could occasionally lift/carry 20 pounds and frequently lift/carry 10 pounds. (*Id.* at PageID.123.) He could stand/walk for six hours of an eight-hour day and sit for six hours. (*Id.*) Plaintiff's ability to push/pull was

not limited. (*Id.*) Plaintiff could frequently climb stairs, stoop, and kneel; occasionally climb ladders, crouch, and crawl; and balancing was not limited. (*Id.* at PageID.123–24.) Plaintiff should avoid concentrated exposure to hazards. (*Id.* at PageID.124.) Plaintiff was found to be able to do light work and was determined to be not disabled. (*Id.* at PageID.125–26.)

### 2.    Application Reports and Administrative Hearings

#### a.    Function Report

Plaintiff listed the following conditions as why he cannot work: constant pain because of herniated disc; he cannot lift anything; sitting causes pain; a pinched nerve causes numbness and pain in his right leg; cubital tunnel in his left arm makes his arm go numb and lose strength. (ECF No. 13, PageID.237.)

Plaintiff described his daily activities as taking care of dogs, lying down, bathing, doing errands, hanging out, and taking medication. (*Id.* at PageID.238.) Plaintiff said his brother and nephew help take care of the dogs. (*Id.*) Plaintiff said, before his condition, he could work out, sit for a long time, and play sports. (*Id.*)

He has no problems with personal care. (*Id.* at PageID.238–39.) He could make easily prepare-able food. (*Id.* at PageID.239.) He did laundry and limited sweeping for chores. (*Id.*) Plaintiff could go outside alone, either driving or walking for travel. (*Id.* at PageID.240.) He shops in stores for food and personal items. (*Id.*) He handles money, pays bills, uses a checkbook and savings account. (*Id.*) Plaintiff's hobbies included walking the dogs, working out, and playing basketball; he tried to do these every day. (*Id.* at

PageID.241.) But, now, Plaintiff does not walk as far, does not play basketball, and does not lift anything heavy. (*Id.*) Plaintiff visits with other people. (*Id.*)

Plaintiff said his conditions limited his ability to lift, squat, bend, reach, sit, kneel, and complete tasks. (*Id.* at PageID.242.) Plaintiff's ability to walk varies by the day. (*Id.*) Plaintiff can pay attention for a while and follow written or spoken instructions very well. (*Id.*) Plaintiff can handle stress and changes in routine. (*Id.* at PageID.243.) Plaintiff uses a brace when his back is in pain, but he does not remember when it was prescribed. (*Id.*)

### b.    Plaintiff's Testimony at the Administrative Hearing

At the time of the hearing, Plaintiff testified he was 40 years old, and lived with his brother, sister, and nephew. (ECF No. 13, PageID.75–76.) His highest level of education was graduating from high school (*Id.* at PageID.75.) He had not worked since September 2013. (*Id.* at PageID.76.) Plaintiff was in a car accident in 2013. (*Id.* at PageID.84.)

Plaintiff stated his back was the biggest impediment that keeps him from working. (*Id.* at PageID.81.) He was in constant pain, but some days were lighter in pain than others. (*Id.*)

He stated his back problems have worsened since January 2016; also, that was the month of the unfavorable ALJ decision in his last disability case. (*Id.* at 76.) He said the problem worsened with him always in pain. (*Id.*) Plaintiff described the problems he had with disc herniation. (*Id.* at PageID.77.) He said he experienced pain with sitting, bending, and sleeping. (*Id.*) He needed to change positions after sitting for 20 minutes. (*Id.*) He said he needed to lie down after activity. (*Id.* at PageID.78.) Plaintiff usually wakes up at 10:00 and lies down by 11:30 for about 30 minutes. (*Id.* at PageID.78–79.) He could resume

activities for a couple of hours before lying down again. (*Id.* at PageID.79.) There are about two to three times per month where he could not do anything because of pain and lying down would not help. (*Id.* at PageID.81.)

Plaintiff described right-side chronic nerve damage. (*Id.* at PageID.79.) He experienced numbness or shooting pain in his right leg. (*Id.* at PageID.80.) He received medication treatment for this condition. (*Id.*) He usually took the medication at night, but he still only had three or four hours of sleep which affected his alertness during the day. (*Id.*)

Plaintiff described little help from physical therapy, and he did not receive injections because they did not work for him. (*Id.* at PageID.82.) Plaintiff declined back surgery after the doctor did not provide the odds of success in helping Plaintiff. (*Id.*) Plaintiff had surgery to remove an osteoma on his forehead, and this helped with his daily migraine headaches. (*Id.* at PageID.83.)

Plaintiff described doctor lifting-restrictions as "pretty much" if it hurts, don't do it. (*Id.* at PageID.84.) Plaintiff does not see himself improving with treatment. (*Id.* at PageID.84–85.)

### c.     The Vocational Expert's ("VE") Testimony at the Administrative Hearing

The VE identified Plaintiff's past work as warehouse worker and heat treater. (*Id.* at PageID.87–88.) The ALJ inquired of the VE with the following hypothetical:

> This person can perform work at the light exertional level. This person can occasionally push, pull with the lower extremities, and operate foot controls.

> This person can never climb ladders, ropes or scaffolds, kneel or crawl. This person can occasionally climb stairs and ramps. This person can frequently balance, stoop and crouch. This person can never work with vibrations, or perform commercial driving.
>
> This person can never operate moving machinery. This person can never work around hazards such as unprotected heights or around unguarded, uncovered moving machinery. . . . This person can carry out simple instructions. . . .

(*Id.* at PageID.88.) This person could not perform Plaintiff's past relevant work. (*Id.*) The VE identified cashier and fast-food worker as other jobs that exist in significant numbers in the national economy, considering Plaintiff's age, education, and work experience. (*Id.* at PageID.88–89.) The VE answered that his testimony was consistent with the *Dictionary of Occupational Titles*. (*Id.* at PageID.89.)

The ALJ asked a second hypothetical, with the same conditions as the first hypothetical except for changing the exertional level to sedentary. (*Id.*) The VE identified jobs of office clerk, assembler, and receptionist as jobs within the second hypothetical. (*Id.*) The VE answered that his testimony was consistent with the *Dictionary of Occupational Titles*. (*Id.* at PageID.89–90.)

The ALJ asked a third hypothetical, with the same conditions as the second hypothetical, and indicated the person would be off task for 20 percent of the time, would miss three day of work a month, and would need to lie down for four of eight hours of the workday. (*Id.* at PageID.90.) The VE said each additional limitation would be work preclusive. (*Id.*) This answer was based on the VE's personal knowledge and experience. (*Id.*)

Counsel inquired of the VE what was the maximum off-task time for a person to be able to work. (*Id.*) The VE answered that 10% or more of the time is work preclusive. (*Id.* at PageID.91.) Next, the VE said absenteeism of 2.5 days or more a month is work preclusive. (*Id.*) Finally, the VE said an employer could accommodate an employee's lying down around breaks or lunch, but other than that, an employer would not tolerate lying down on the job. (*Id.*)

### F.     Governing Law

The ALJ must "consider all evidence" in the record when making a disability decision. 42 U.S.C. § 423(d)(5)(B). The regulations carve the evidence into categories: "acceptable medical sources" and "other sources." 20 C.F.R. §§ 404.1513 (amended March 27, 2017), 416.913 (amended March 27, 2017). "Acceptable medical sources" include, among others, licensed physicians and licensed or certified psychologists. *Id.* §§ 404.1513(a), 416.913(a). "Other sources" include medical sources who are not "acceptable" and almost any other individual able to provide relevant evidence. *Id.* §§ 404.1513(d), 416.913(d). Only "acceptable medical sources" can establish the existence of an impairment. SSR 06-03p, 2006 WL 2329939, at *2 (Aug. 9, 2006). Both acceptable and non-acceptable sources provide evidence to the Commissioner, often in the form of opinions "about the nature and severity of an individual's impairment(s), including symptoms, diagnosis and prognosis, what the individual can still do despite the impairment(s), and physical and mental restrictions." *Id*. When acceptable medical sources issue such opinions, the regulations deem the statements to be "medical opinions" subject to a multi-factor test that weighs their value. 20 C.F.R. §§ 404.1527 (eff. Sept. 3, 2013 to

Mar. 26, 2017), 416.927 (eff. Aug. 24, 2012 to Mar. 26, 2017). Excluded from the definition of "medical opinions" are various decisions reserved to the Commissioner, such as whether the claimant meets the statutory definition of disability and how to measure his or her RFC. *Id.* §§ 404.1527(d), 416.927(d).

The ALJ must use a six-factor balancing test to determine the probative value of medical opinions from acceptable sources. *Id.* §§ 404.1527(c) (eff. Sept. 3, 2013 to Mar. 26, 2017), 416.927(c) (eff. Aug. 24, 2012 to Mar. 26, 2017). The test looks at whether the source examined the claimant, "the length of the treatment relationship and the frequency of examination, the nature and extent of the treatment relationship, supportability of the opinion, consistency of the opinion with the record as a whole, and specialization of the treating source." *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 544 (6th Cir. 2004); *see also* 20 C.F.R. §§ 404.1527(c), 416.927(c). ALJs must also apply those factors to "other source" opinions. *See Cruse v. Comm'r of Soc. Sec.*, 502 F.3d 532, 540–42 (6th Cir. 2007); SSR 06-03p, 2006 WL 2329939, at *2 (Aug. 9, 2006).

Because Plaintiff filed his claim before March 27, 2017, he is entitled to the benefit of the treating-source rule. Under that rule, certain opinions of a treating physician receive controlling weight if they are "well-supported by medically acceptable clinical and laboratory diagnostic techniques" and are "not inconsistent with the other substantial evidence in [the] case record." 20 C.F.R. §§ 404.1527(c)(2), 416.927(c)(2); *see also* *Wilson*, 378 F.3d at 544. The only opinions entitled to dispositive effect deal with the nature and severity of the claimant's impairments. 20 C.F.R. §§ 404.1527(d), 416.927(c)(2).

Therefore, the ALJ does not owe a treating opinion deference on matters reserved to the Commissioner. 20 C.F.R. §§ 404.1527(d), 416.927(d).

The regulations mandate that the ALJ provide "good reasons" for the weight assigned to a treating source's opinion in the written determination. 20 C.F.R. §§ 404.1527(c)(2), 416.927(c)(2); *see also Dakroub v. Comm'r of Soc. Sec.*, 482 F.3d 873, 875 (6th Cir. 2007). Therefore, a decision denying benefits must give specific reasons, supported by record evidence, for the weight granted to a treating source's opinion. *Rogers*, 486 F.3d at 242. For example, an ALJ may properly reject a treating source opinion if it lacks supporting objective evidence. *Revels v. Sec'y of Health & Human Servs.*, 882 F. Supp. 637, 640–41 (E.D. Mich. 1994), *aff'd*, 51 F.3d 273 (Table), 1995 WL 138930, at *1 (6th Cir. 1995).

The claimant must provide evidence establishing his or her RFC. The statute lays the groundwork for this, stating, "An individual shall not be considered to be under a disability unless he [or she] furnishes such medical and other evidence of the existence thereof as the Secretary may require." 42 U.S.C. § 423(d)(5)(A); *see also Bowen*, 482 U.S. at 146 n.5. The RFC "is the most he [or she] can still do despite his [or her] limitations," and is measured using "all the relevant evidence in [the] case record." 20 C.F.R. § 404.1545(a)(2).

According to SSR 16-3p, an ALJ must analyze the consistency of the claimant's statements with the other record evidence, considering his or her testimony about pain or other symptoms with the rest of the relevant evidence in the record and factors outlined in the Social Security Ruling. SSR 16-3p, 2016 WL 1119029 (Mar. 16, 2016). This analysis

and the conclusions drawn from it—formerly termed a credibility determination—can be disturbed only for a "compelling reason." *Sims v. Comm'r of Soc. Sec.*, 406 F. App'x 977, 981 (6th Cir. 2011); *Warner v. Comm'r of Soc. Sec.*, 375 F.3d 387, 390 (6th Cir. 2004).

The Social Security regulations establish a two-step process for evaluating subjective symptoms, including pain. 20 C.F.R. § 404.1529(a) (2016); SSR 16-3p, 2016 WL 1119029, at *2 (March 16, 2016). The ALJ evaluates complaints of disabling pain by confirming that objective medical evidence of the underlying condition exists. The ALJ then determines whether that condition could reasonably be expected to produce the alleged pain or whether other objective evidence verifies the severity of the pain. *See* 20 C.F.R. § 404.1529 (2016); SSR 16-3p, 2016 WL 1119029, at *2 (March 16, 2016); *Stanley v. Sec'y of Health & Human Servs.*, 39 F.3d 115, 117 (6th Cir. 1994). The ALJ ascertains the extent of the work-related limitations by determining the intensity, persistence, and limiting effects of the claimant's symptoms. SSR 16-3p, 2016 WL 1119029, at *6 (March 16, 2016).

While "objective evidence of the pain itself" is not required, *Duncan v. Sec'y of Health & Human Servs.*, 801 F.2d 847, 853 (6th Cir. 1986) (quoting *Green v. Schweiker*, 749 F.2d 1066, 1071) (3d Cir. 1984)) (internal quotation marks omitted), a claimant's description of his or her physical or mental impairments will "not alone establish that [he or she is] disabled." 20 C.F.R. § 404.1529(a). The absence of objective, confirming evidence obligates the ALJ to consider the following factors:

(i)     [D]aily activities;
(ii)    The location, duration, frequency, and intensity of . . . pain;
(iii)   Precipitating and aggravating factors;

> (iv)    The type, dosage, effectiveness, and side effects of any medication . . .
>         taken to alleviate . . . pain or other symptoms;
> (v)     Treatment, other than medication, . . . received for relief of . . . pain;
> (vi)    Any measure . . . used to relieve . . . pain.

20 C.F.R. § 404.1529(c)(3), 416.929(c)(3) (2016); *see also Felisky v. Bowen*, 35 F.3d 1027,

1039–40 (6th Cir. 1994); SSR 16-3p, 2016 WL 1119029, at *7 (March 16, 2016).

###    G.    **Arguments and Analysis**

Plaintiff argues that the ALJ failed to include relevant limitations in Plaintiff's

residual functional capacity[5].

Plaintiff has the burden of proving that he is disabled through step four of the

evaluation process. *See* 20 C.F.R. § 416.912(a); *Bowen v. Yuckert*, 482 U.S. 137, 146 n.5

(1987). From this information, the ALJ "is required to incorporate only those limitations

accepted as credible" in posing hypothetical questions to the vocational expert. *Casey v.

Sec'y of Health & Human Servs.*, 987 F.2d 1230, 1235 (6th Cir. 1993).

The ALJ found a number of Plaintiff's conditions to be not severe, including his

GERD, allergic rhinitis, insomnia, right lateral epicondylitis, cubital tunnel syndrome, and

neuropathy. An impairment is not severe if "it does not significantly limit [Plaintiff's]

physical or mental ability to do basic work activities." 20 C.F.R. § 416.922. As to these

conditions, the ALJ explained the limited nature of the conditions and the apparently

successful treatment received; or alternatively, the ALJ explained the lack of record to

---

[5] Plaintiff's arguments focus entirely on the supportability of the RFC. But Plaintiff suggests a step-five challenge in suggesting that the vocational expert's testimony does not constitute substantial evidence. However, this argument is not developed. Accordingly, the ensuing analysis will focus on the RFC arguments. *See Flynn v. Comm'r of Soc. Sec.*, 2018 WL 5306640 at *3 n.2 (E.D. Mich. 2018), rep. and rec. adopted, 2018 WL 5305077 (E.D. Mich. 2018).

support a conclusion that the condition was severe. (ECF No. 13, PageID.60–61.) Plaintiff claims that the RFC is flawed because substantial evidence does not support a finding that his insomnia and chronic pain were not severe. First, even if we assume the evidence supported a "severe" finding for insomnia and chronic pain, that is not a reversible error. Here, the ALJ found other impairments to be severe—so that moves past step two of the evaluation process—and then the ALJ must consider limitations associated with Plaintiff's severe and non-severe impairments in ascertaining the RFC. 20 C.F.R. § 416.945. Here, this process makes a finding of an impairment to be non-severe at step two, assuming there are other severe impairments, to be a nonreversible error. *See Fisk v. Astrue*, 253 F. App'x 580, 583 (6th Cir. 2007) (citing *Maziarz v. Sec'y of Health & Human Servs.*, 837 F.2d 240, 244 (6th Cir. 1987)). Second, Plaintiff's other claims about the RFC not being supported by substantial evidence will be discussed below.

Plaintiff asserts that certain features of the RFC are internally inconsistent. Specifically, Plaintiff's inability to kneel or crawl is allegedly inconsistent with frequent stooping, crouching, or balancing. Plaintiff cites no regulation or case law to support that assertion. Further, Plaintiff does not cite to medical record to attempt to claim that Plaintiff cannot physically perform the RFC limitations. "This court need not make the lawyer's case by scouring the party's various submissions to piece together appropriate arguments." *Crocker v. Comm'r of Soc. Sec.*, 2010 WL 882831 (W.D. Mich. 2010) (citation omitted). In any event, SSR 85-15 indicates that stooping, kneeling, crouching, and crawling are progressively more strenuous body movements, so the RFC limits appear generally consistent. If there is an issue about the RFC limit of frequent crouching, relative to the

other discussed limits here, it is—as the Commissioner suggests—a red herring because none of the identified jobs at step five involve crouching. (*See* Def. Br., ECF No. 17, PageID.638, 640–41.) Stated another way, assuming Plaintiff presented evidence that he cannot crouch, that does not change the disability evaluation through step five.

Plaintiff claims the ALJ did not account for Plaintiff's documented insomnia. That is incorrect. The ALJ explained the view that Plaintiff's insomnia condition improved with Trazodone. (ECF No. 13, PageID.60–61.) Plaintiff indicates the record is replete with references to chronic pain and sleep disturbance. However, "When deciding . . . whether substantial evidence supports the ALJ's decision, we do not try the case de novo, resolve conflicts in evidence, or decide questions of credibility." *Bass v. McMahon*, 499 F.3d 506, 509 (6th Cir. 2007) (citation omitted). Further, "If the ALJ's decision is supported by substantial evidence, then reversal would not be warranted even if substantial evidence would support the opposite conclusion." *Id.* Plaintiff's general reference to a replete record supporting his claim, without more analysis and purported error, is unavailing to him under the substantial evidence test. The "mere diagnosis" of Plaintiff's insomnia, alone, does not describe the severity of the condition nor indicate he is disabled. *See Higgs v. Bowen*, 880 F.2d 860, 863 (6th Cir. 1988); *Foster v. Bowen*, 853 F.2d 483, 489 (6th Cir. 1988). Similarly, Plaintiff's claim of error by citing contrary medical records related to Plaintiff's chronic pain syndrome and lateral epicondylitis fail for the same reasons above. Plaintiff's recitation of record evidence of low back pain and other conditions were considered by the ALJ, as Plaintiff does not show error by, for example, the ALJ's failure to consider a record or properly explain his decision.

Plaintiff speculates[6] that his record's references to chronic pain and sleep disturbance evidence an impact to his ability to sustain concentration and remain on task. Plaintiff offers no medical evidence of the consequence or effect of such pain or disturbance. Again, the mere diagnosis or documentation of a condition does not inform of Plaintiff's limitations or ultimately his disability. Further, Plaintiff offers no medical opinion evidence to elaborate on his condition nor what would be a relevant limitation to concentration and task persistence.

Plaintiff appears to misunderstand certain record evidence. Plaintiff cites the May 2018 EMG finding evidence of mild L5 radiculopathy as evidence that this is contradictory of the ALJ's citation[7] of "no evidence of neuropathy". First, radiculopathy and neuropathy are different conditions[8]. Second, Plaintiff's radiculopathy was found to be a severe impairment. (ECF No. 13, PageID.60.) Third, the ALJ concluded "those showed no evidence of neuropathy" because the November 2016 EMG study that specifically stated, "There is no clear electrodiagnostic evidence of neuropathy" or in May 2018, "There was no evidence for mononeuropathy or plexopathy identified." (*Id.* at PageID.61; citing *id.* at PageID.330, 393.) There is no error in the ALJ's recitation of this evidence.

---

[6] Plaintiff directly asks, "How could such chronic pain not impact one's ability to sustain concentration and remain on task?" (Def. Br., ECF No. 15, PageID.620.) The ALJ in fact stated "Although [Plaintiff] testified that pain disturbs his sleep, the record does not show that he had insomnia that affected him during the relevant period." (ECF No. 13, PageID.61.) Plaintiff does not point to record evidence showing the *effect* of his sleep issues and only suggests impaired concentration or persistence followed his pain and sleep disturbance issues.

[7] (*Id.* at PageID.61.)

[8] https://edisonspinecenter.com/radiculopathy/

Plaintiff cites March 2018 physical therapy records for Plaintiff's reported pain rating of 9 at the worst and for the rated abdominal and lumbosacral core strength of 1 out of 5. (Def. Br., ECF No. 15, PageID.620.; citing ECF No. 13, PageID.398, 402.) Plaintiff does not cite the improvement achieved during physical therapy; specifically, the core strengths improved to 4/5. (ECF No. 13, PageID.424.)

Plaintiff suggests that the ALJ ignored the findings of Dr. Udehn. However, "There is no requirement . . . that either the ALJ or the reviewing court discuss every piece of evidence in the administrative record." *Dickey-Williams v. Comm'r of Soc. Sec.*, 975 F. Supp.2d 792, 810 (E.D. Mich. 2013) (citing *Kornecky v. Comm'r of Soc. Sec.*, 167 F. App'x 496, 508 (6th Cir. 2006)). The ALJ appropriately cited the Dr. Udehn records for the relevant information provided, being Plaintiff's successful osteoma surgery that resolved his headaches. (ECF No. 13, PageID.63. Citing *id.* at PageID.427, *see also* PageID.447.) Dr. Udehn's records support the osteoma procedure and appear to report[9] Plaintiff's subjective symptoms without any indication of that Doctor's efforts to address those symptoms. Overall, Plaintiff's subjective pain symptoms reported to Dr. Udehn appear consistent with the other records where he actually received relevant treatment. It is not clear what purported Dr. Udehn finding Plaintiff alleges was ignored by the ALJ.

---

[9] In November 2016, Plaintiff was

> Here for consult of Osteoma of the Skull, he c/o constant headache varying in severity, he says he has not other symptoms other than that. He does claim to have aches and pains elsewhere in the body but denies it being associated to this. He is currently going to pain management center to help with his aches and pains.

(ECF No. 13, PageID.427.)

Plaintiff claims that the ALJ's conclusion is inconsistent with the evidence; he disputes that his condition improved since the last unfavorable disability decision. The ALJ in the current case found Plaintiff could perform a limited range of light work while the last ALJ found Plaintiff could only perform limited sedentary work. The ALJ explained Plaintiff's stability with conservative treatment; Plaintiff's undocumented physical examinations or normal physical examinations; Plaintiff's normal gait, strength, range of motion and reflexes; his denial of injections; his document improvement with physical therapy; his regular exercising, up to five times a week. (ECF No. 13, PageID.64.) Rather than inherently flawed, as Plaintiff suggests, the ALJ appropriately explained the circumstances that surround Plaintiff's claimed chronic back pain. The alleged conflict of evidence was considered by the ALJ, and not to be reweighed by the Court. *Bass*, 499 F.3d at 509.

The fact that Plaintiff received parking placards, alone, does not assist Plaintiff with his case, as the standards between Social Security disability benefits and parking placards are not suggested to be the same, and consequently, different results between the two systems are possible. *See Bass*, 499 F.3d at 511.

### H.      Conclusion

For these reasons, I would conclude that substantial evidence supports the Commissioner's denial of benefits, and I recommend **DENYING** Plaintiff's motion, (ECF No. 15), **GRANTING** the Commissioner's motion, (ECF No. 17), and **AFFIRMING** the Commissioner's final decision denying benefits.

III. <u>**REVIEW**</u>

Pursuant to Rule 72(b)(2) of the Federal Rules of Civil Procedure, "[w]ithin 14 days after being served with a copy of the recommended disposition, a party may serve and file specific written objections to the proposed findings and recommendations. A party may respond to another party's objections within 14 days after being served with a copy." Fed. R. Civ. P. 72(b)(2); *see also* 28 U.S.C. § 636(b)(1). Failure to file specific objections constitutes a waiver of any further right of appeal. *Thomas v. Arn*, 474 U.S. 140 (1985); *Howard v. Sec'y of Health & Human Servs.*, 932 F.2d 505 (6th Cir. 1991); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981). The parties are advised that making some objections, but failing to raise others, will not preserve all the objections a party may have to this Report and Recommendation. *Willis v. Sec'y of Health & Human Servs.*, 931 F.2d 390, 401 (6th Cir. 1991); *Dakroub v. Detroit Fed'n of Teachers Local 231*, 829 F.2d 1370, 1373 (6th Cir. 1987). Pursuant to E.D. Mich. LR 72.1(d)(2), a copy of any objections is to be served upon this magistrate judge.

Any objections must be labeled as "Objection No. 1," "Objection No. 2," etc. Any objection must recite precisely the provision of this Report and Recommendation to which it pertains. Not later than 14 days after service of an objection, the opposing party may file a concise response proportionate to the objections in length and complexity. Fed. R. Civ. P. 72(b)(2); E.D. Mich. LR 72.1(d). The response must specifically address each issue raised in the objections, in the same order, and labeled as "Response to Objection No. 1," "Response to Objection No. 2," etc. If the Court determines that any objections are without merit, it may rule without awaiting the response.

Date:  April 14, 2021

S/ PATRICIA T. MORRIS
Patricia T. Morris
United States Magistrate Judge